There really is one single overarching issue in this case, and that is, did the district court commit an abuse of discretion in dismissing Mr. Briscoe's case sua sponte after Mr. Briscoe, who was incarcerated and proceeding pro se? The question here is, should he have had a hearing? I believe that's exactly right. My guess is what the court thought is, when you look at the polis factors, they just, with the exception of perhaps the last one, that there possibly was some merit to the claim, that there had been so much going on that the other five polis factors did not line up in favor of Mr. Briscoe. My guess is I detected there was a significant amount of frustration because there was a perception that Mr. Briscoe was perhaps gaming the system. Understandable, I think, but if you look at the polis factors and you examine them and you compare this case to a number of other cases that were issued both before and after Judge Monelly's decision in this case, there really is a stark contrast between the opportunities that were provided to other plaintiffs proceeding pro se, and particularly prisoners proceeding pro se versus what was provided to Mr. Briscoe. If you take a look, and if I might just start with the court's... Isn't the real problem here, I mean, doesn't the whole problem emanate from the fact that the, this, the motion, there was no motion filed, that this dismissal was sua sponte. Had there been a motion filed, Mr. Briscoe would have been served with the motion and would have been given an opportunity to respond to the motion, but under the circumstances here, where it was sua sponte, there isn't necessarily any hearing mechanism set up for sua sponte action like this. Isn't that the big problem? I think that is one of the big problems. I think another of the problems, let me address yours first, Your Honor. Two days, it was literally two days after the pretrial conference was canceled that this judge, sua sponte, dismissed the action. Mr. Briscoe contends that he never received either of the two orders issued on September 8th. The first one saying, if you don't show up, we might dismiss your case, and the second one saying pretrial conference is canceled. He did not receive either of those. How do we know that? He says he doesn't. And he says in interviews with you, or it's in the record somewhere, or what? He did say in an interview with me, he also claimed, there was also nothing in the record indicating that he actually was served. There's no proof of service. There is only what has been recorded, and that is based on the warden's communication or the prison official's communications with the judge. There simply just isn't. But after the dismissal, when did he find out? He filed a notice of appeal on September 13th, so it was within a matter of days. And he wrote a letter, but the letter wasn't until December, complaining about... Two or three months later. Yeah, that's a long delay if he discovered he's been thrown out because he didn't show up. And if he had an excuse, you would expect him to have instantly sent a letter to the trial judge, not the chief judge, and the next day, not three months later. I don't disagree with that. His letter in December to the chief judge of the Middle District suggests that he did file another letter, and I've been unable to locate that letter. He did send another letter to the court, to Judge Munley, in fact, saying, I told, you know, I was not able to appear, they prevented me from going. When was that? The letter to Munley as opposed to the chief judge? It doesn't say. And the only record I've been able to find of it, or the only reference I've been able to find of it, was in the letter that he wrote to the chief judge of the Middle District. The pretrial conference was scheduled for, I guess, the 9th of September. What was the trial date that that looked toward? It was September 27th. Okay, so just a couple weeks later. What I was trying to figure out is whether delaying the pretrial conference would have bumped the trial date. That is, whether there would have been a motive for him to not show up in order to advance his pending motion for a continuance of the trial date by delaying the time the pretrial conference could be held from September 9th to sometime much closer to the trial date, and then hope that that trial date would be bumped because of the lateness of the pretrial conference. I think these are all good questions, and unfortunately, we are speculating, and I think the reason we're speculating is because there wasn't a hearing. Mr. Briscoe never had an opportunity to say, here's why. The district court never had an opportunity to listen to him, get a look at him face-to-face, and decide what really happened, or at least make a much more informed decision as to what happened on September 8th. Do we know what the chain of communication was whereby the trial judge was told that Briscoe was refusing to be transported, and therefore wouldn't be in attendance at the pretrial conference? All I was able to discern from the record and from conversations with my client, well, my client wasn't there, but what I've been able to dig out from the record is that the court received a telephone call from prison officials, unnamed, that this is in the order, both orders, I believe, from September 8th. He received a phone call, and he faxed, I believe, an order, and the order stated, this must be served upon plaintiff forthwith, and then he received another call saying, well, he's still refusing to go. But he never talked to Mr. Briscoe directly? Correct. And we don't know the identity of the prison officials who reported the refusal? That's not in the record. What are you asking for here? Are you asking that the complaint be reinstated, or are you asking for a hearing on the dismissal? We're asking for a hearing. We're asking that this court vacate the order of dismissal and provide Mr. Briscoe with an opportunity to show cause as to why he did not appear. I don't know if I have any further questions. Why don't we hear from the other side, and then we'll have you back on rebuttal. Thank you very much. May it please the court, counsel. My name is Vincent Mazzeschi. I'm here on behalf of the Department of Corrections and Human Services. Except for Kenneth Claus. Mr. Claus is represented by separate counsel who is reserved two of our 15 minutes. Could you address Judge Fischer's question that he asked Ms. Simmons, which is, isn't there a major problem with a sua sponte dismissal without even a motion by the government,  there was no opportunity to be heard by Mr. Briscoe? Your Honor, I understand that the language of Rule 41 itself doesn't require, I mean, it doesn't say anything about sua sponte dismissal, but the cases, ironically, Polis, as well as panel opinions, Donnelly, Isley, Sally, there were some inmate cases, that there's no requirement that the defendant move to dismiss under 41. The cases uniformly say, as far as I can understand, that sua sponte dismissals are permissible. There's no requirement for a hearing. Your question was, why not have a hearing? Well, the point is, I mean, all you hear is one side. It may be right. I'm not saying that they were wrong, but you don't know. You haven't heard the other side. I mean, at one point, well, go ahead. In the greater context of this case, Your Honor, I can understand, at first glance, this record may appear thin. At first glance, the September 10th opinion, in support of the order dismissing the case, may not be entirely persuasive. But if we take a step back and look at the record as a whole, and place it in the context of an abuse of discretion standard, abuse of discretion has been defined as a clear error of law. There's no clear error of law here. Judge Munley looked at the Polis case, cited the six factors, balanced them, and made a decision. Abuse of discretion has been defined in some circumstances as irrational or arbitrary, and I would submit that looking at the bigger picture, this isn't an irrational, arbitrary decision. The trial judge is in the best position to know the parties before them. But let's look at the Polis factors, again, keeping in mind Judge Fischer's question. The first Polis factor is the court concluded that the fault was solely Briscoe's, and they did so based solely on the assertions of the SCI Fayette officials. I mean, doesn't Briscoe get an opportunity to say what he's thinking? I would submit no, Your Honor. I mean, it's speculative otherwise, isn't it? Well, we know Mr. Briscoe is going to say, because he said in his letter to Chief Judge Banaski, they wouldn't take me. But now, if we're judging for Wayne and credibility. But he wrote that later. I mean, the point is, there's a modicum of process that has to be done here before you dismiss, and it's got to be quite egregious before you can even consider, I would think, a sua sponte dismissal. I would submit, Your Honor, that there is process there. The court indicated there's a September 8th order that indicated upon notification from plaintiff's custodian, et cetera, et cetera, the court had that faxed to the prison, gave Mr. Briscoe until 3 o'clock to get on the bus and get to court for the next day, or otherwise suffer dismissal on the merits. The language is in the order. He had notice that he needs to get out of the cell, get on the bus, and go up towards Scranton for the conference the next day, or he was going to suffer dismissal on the merits. That's the due process, I think, if the court has a concern, should there have been a warning of the results that would happen. I think he did get that warning. If we take the court's opinion and orders at face value, that there's no need to have a hearing. The problem is here is that at least as far as the record's concerned, other than what the court says in its order dismissing, there's no record that he was even notified. There's a record that the court directed SCI Fayette to notify him, but it doesn't appear that there's anything in the record. There's nobody's affidavit. There's nobody's affidavit of service. None of that is there to determine that, in fact, he was notified. And then he comes in with his letter to Judge Van Aske, which isn't in the record either. But he has an answer. Well, I wasn't notified. And in his brief, he's saying I should at least be entitled to a hearing. Thank you for pointing that letter again out, Your Honor. That letter, I don't recall, says anything about I was not notified. It says they would not transport me. In fact, it says they would not transport me three or four times and any throughout. Oh, and they wouldn't give me my legal papers too. I think also they said he had appeared in prison guard at one point. Did they not? Honestly, I don't recall anything about that. Maybe that was for the deposition. Prison guard. I think his excuse for the deposition was either they wouldn't let him out to take a shower, then he didn't have clothes, he didn't have legal materials, he was probably in a restricted housing unit. Mr. Miseski, talk about the polis factors for a second. For instance, and there's no one polis factor which is dispositive. You have to weigh and balance the polis factors. But as far as prejudice is concerned, what possible prejudice did the Department of Corrections suffer by him not showing up at this pretrial conference? As far as prejudice, Your Honor, there was a September 4th deadline for him to file his witness statements, pretrial memoranda, jury instructions, voir dire, et cetera. All three defense attorneys had filed that. The trial date was literally two and a half weeks away. Mr. Briscoe doesn't file anything. His motion to extend time shed some light on his thinking. He wanted 65 days to hire counsel. I think he said in that motion, I can't go to court and represent myself. Basically, I'm in over my head. The court never ruled on that motion. No, it didn't. But to get back to your question of prejudices, the prejudice is the defense. There's blocking off time to go to trial in two and a half weeks. They're setting up witnesses. They've met their filing deadlines. They have no idea whether they're going to trial or not. Schedules are being set up to let, no doubt, to let the 10 different parties off, defendants off. The prejudice is they can't adequately prepare for trial if he's not going to cooperate with pretrial orders and deadlines and filing. This is his case, and he's choosing not to prosecute at this point by not filing, by not showing up at the pretrial conference. But was that even on the record? On the record, I guess, is kind of a relevant term. I'm submitting there are certain things that are not in the record. So by it not being there, we know he didn't file his five pretrial things. As far as the other factors are concerned, the willfulness in the history of dilatory conduct, again, back to the bigger context, it's in the record that he didn't show up for deposition. The parties moved for dismissal and sanctions, and the lower court gave him every benefit of the doubt. Cited to the Polis case and all six factors, gave Mr. Briscoe every benefit of the doubt for not showing up at deposition. But what is the exact prejudice here that this particular pretrial conference scheduled for the 9th was canceled on the 8th? Your Honor, I would submit the prejudice is by him not showing up, nobody knows whether the trial is going to take place on September 27th. Wait, wait, wait. One step at a time. You didn't show up because you knew the day before that it was canceled. The judge notified everybody the day before. So nobody wasted any time on the day that the conference was supposed to be held. So, so far, I don't see any prejudice. Now, if the trial were going to go ahead on September 21st, and the pretrial conference couldn't be held until the 19th, then you might be prejudiced. But we don't have any basis of knowing that there would be that kind of delay. As far as I can imagine, the pretrial conference could have been rescheduled for the 11th and held on the 11th. And if he's in default of requirements, then he can be thrown out on that basis. But prejudice in being prepared for trial doesn't automatically arise when the trial is not until the 21st, just because a conference on the 9th is canceled. I would submit this situation is analogous to those situations where the party doesn't cooperate with a deposition or answer questions in interrogatories. How can the defense prepare if he doesn't meet the filing deadline of September 4th, which at this point, September 8th or 10th. Look, you could have moved for sanctions for the failure to file on September 4th. But that's not what's before us. What's before us is the failure to show up on September 9th. And without more in the record, I don't see actual prejudice. There could have been prejudice if you were forced to go on trial without adequate notice of his positions, without a pretrial conference enough in advance of the trial date. But there's no such evidence in the record. All we know is that on the 8th, the conference for the 9th was canceled and not reset. It could have been reset. Your Honor, if we look at it, Your Honor spoke to motive and possibly manipulating the system earlier. He filed a motion to extend time for 65 days to get counsel, and he indicated he couldn't go to court on his own by not showing up at the pretrial conference, by not filing deadlines. If it doesn't get dismissed, he gets what he wants, and that puts Mr. Briscoe in charge of when things are going to be tried or not. I would respectfully submit that the trial court has to maintain control over the docket. Well, I'm not asking about control. I'm asking about whether there was actual prejudice to the government that you can articulate, and so far I don't hear anything being articulated. I've submitted that the three attorneys who had their calendars blocked off, the ten defendants who were probably not scheduled to work but have blocked off a couple days for trial, the witnesses. Yeah, but none of that is necessarily going to go by the board. If the pretrial conference is rescheduled for the 12th, all those blocking out schedules will actually occur on the 21st. As of September 8th, I would submit the prejudice is they don't know whether or not they're going to trial. I mean, respectfully, Your Honor, this is kind of hindsight, and perhaps the lower court could have set up another date. But again, when we look at what's before the court, the motion to extend time, the failure to file documents, his previous not showing up for deposition, I mean, how many bites at the apple does Mr. Briscoe get to not cooperate with court orders? He didn't go to the deposition the first time. He didn't file his pretrial documents on September 4th, and the court, after talking to the prison officials, Mr. Briscoe didn't show up for the pretrial conference. That's three different things that he chose not to do. It's his case to move forward. As far as the credibility and not hearing from Mr. Briscoe, I mean, he's in for a robbery conviction. That's a crime and falsity conviction. There's the letter to this Chief Judge Vanasky two months later. There's no motion to reconsider filed shortly after September 10th of record, asking the judge to reconsider these things. As Your Honor pointed out, it was December, November or December, that he wrote to the Chief Judge alleging conspiracies between the judge and prison officials, alleging he was, prison officials unsuccessfully tried to kill him a couple times and so forth. But was there, let's just go to the fifth factor. We can come back. Was there something short of dismissal that could have been done, similar to what Judge Michel just said? I would submit no, Your Honor. Your Honor is— You mean the judge couldn't have done what Judge Michel just said? Reschedule the pretrial conference? Reschedule the pretrial conference, saying to the folks, this is still going forward on the 27th, so better make up your mind if you're going to be here. Now, in one sense, it turns out he didn't have an attorney, and the court would have to rule on that. But essentially what happened is the court, again, sua sponte, dismissed. No hearing, no anything, and yet there were other things that could have been considered. Your Honor— It looks like a rush to judgment. If I may respectfully answer that, if we go back to an abuse of discretion standard, and I agree, you know, reasonable minds can differ and we can do things, look back and maybe things could have been done differently, but even as the Polis case itself said in the ending, in conclusion, even if the Third Circuit disagrees with what the lower court did in Polis, that disagreement doesn't amount to abuse of discretion. If abuse of discretion really is a clear error of law or something arbitrary and irrational, I would submit this is not arbitrary or irrational. This is a trial court who's familiar with the parties— No, but what it is or could be arbitrary, we'll come back to that, because if you're going to dismiss, the party that's going to be taken out of this has to have a full and fair opportunity to be heard. There wasn't even a motion. Again, Your Honor, with Polis and some of the other panel opinions out there, the defense doesn't have to move. There doesn't have to be a hearing. There doesn't have to be a motion. You're right. There may not have to be a hearing, but there's an opportunity to be heard. There wasn't even a motion. And understanding the court's concern, to take that one step farther, maybe it's a little speculation, Mr. Briscoe is going to say probably the same thing he said in the letter to Chief Judge Van Aske. See, that—you hit on it. There's the first Polis factor and the fourth Polis factor are simply speculation. You may be right. Again, we're not saying in any way that you're necessarily wrong. We just don't know. I would—if I could just answer the sanctions real quick, Your Honor. As far as monetary sanctions, we know he's an inmate. He has IFP status. Monetary sanctions aren't available. Dismissal without prejudice? No. What about Judge Michel's point? You could still keep this thing—the train on tracks by saying, okay, we won't have it on the 9th. We'll have it on the 11th. And if you don't show up, I will entertain a motion to have the matter dismissed, just so you understand the seriousness that we're dealing with this. But that's what we have with the September 8th order. You need to show up or you're going to suffer dismissal on the merits. Respectfully, it's kind of redundant to give him a third chance. He had his second chance. And if you count the deposition, he had three chances, and now we're giving him a fourth maybe. Well, you keep mentioning the deposition, but the court didn't hold his failure to attend that deposition against him, did it? I understand that, Your Honor. And if the scope of review is does the record support, then understandably the September 10th opinion says there's no real history of dilatoriness. The employees would put the opinion aside and say, look at the record. He failed to show up for the deposition, and Judge Munley gave him every benefit of the doubt and denied a motion for sanctions. He got every benefit of the doubt the year before or the year and a half before when he didn't show up for his deposition. Now it's time to move forward. It's Mr. Briscoe's case. He got the benefit of the doubt. I would submit he got the warning on September 8th, get on the bus or else. And there's really no need to push another pretrial conference to the 12th and give a second warning or a third warning. I mean, he had his warning on September 8th. How do you know that? You keep saying he had his warning on September 8th, but all we know is the trial judge said prison officials told him the papers were served and the prisoner was recalcitrant. Thank you, Your Honor, because I forgot to mention this. I would submit it's a reasonable inference that if the prison officials would take him from his cell in July to the July pretrial conference, why in the world would they refuse to take him for a September pretrial conference? If prison officials would serve on him the court order in August regarding pretrial conference trial date and serve on him the September 10th dismissal, why in the world would they not serve on him the September 8th order? So we can look at Mr. Briscoe's actions, the letter realizing it's been dismissed, the motion to extend certain deadlines. We know he was made aware of certain factors, so why would the prison officials pick and choose, well, we're going to give you this order, but we're not going to give you that order. We're going to transport you in July. We're not going to transport you in September. That's just a real stretch of the imagination, I would submit. I mean, I would submit it's a reasonable inference that when we look at those factors, that it's not the prison officials' fault. They didn't refuse to transport him because they did previously. They did not give him the September 8th order because they gave him these other orders. Mr. Mazesky, I can understand the district court's frustration with this case, and this case is just being one of many prisoner cases that the courts have. We know that. But wouldn't it have made more sense even after the court entered disorder? And this, you know, is obviously any time you're in litigation and you can win a case, you think, well, you take the win however you can. I was in that situation a number of times. But wouldn't it have made more sense for your office to have said to the court, Your Honor, wouldn't it make more sense in this situation to at least have a hearing and establish a record in this case? Then you might not be here. I understand where the court's coming from, Your Honor. And, again, in hindsight, things could have happened differently and built a stronger record. But I would submit what we have here is enough under the rule and the cases interpreting it, particularly Paul's. And I submit that this case is analogous to Paul's in that, I mean, understandably it sounds like this court's troubled with some things, but if it were to remand it, then Judge Mundley can simply look back at the records, cite to the deposition as being a history, and cite to a few other things and build maybe a stronger, more persuasive opinion. And then Mr. Briscoe's going to appeal, and we're going to be right back here again, just like the Polis case. And in Polis we know what the Third Circuit said. Well, we might see it differently, but that is an abuse of discretion. Well, I guess you're almost inviting us to say, well, don't make a determination. Either give them a trial or sustain the district court. Well, I'm submitting that there's enough in the record that the lower court did not commit the abuse of discretion. Reasonable minds can differ, but where he has discretion to control his docket and he cited to the law and cited to some different factors in this case, maybe not all the factors we would have liked to have cited him to, but he cited to enough and he balanced. It's not like those cases where the inmate failed to serve process and it was quickly dismissed. You know, the sanction could have been dismissed without prejudice. It's unlike the Barger case that Your Honors decided a few months ago. We're two and a half weeks out of trial. This is really the only sanction. Why couldn't he have held that sanction in reserve for a couple days and notified both sides that he was considering dismissal with prejudice, without a motion, but he would ask both sides to file affidavits or documents to establish what the facts were. And then maybe he would have had an affidavit from a prison official saying, I handed the order to the inmate. I stood there while the inmate read the order. Some other prison official might have said, I observed him refuse to get on the bus and refuse to be put on the bus and so forth. And then the judge would have had a very solid record basis for the exact same remedy that he imposed here and would have only taken another few days to build that record, not even with a live hearing, just with papers being filed by both sides before throwing the case out. Your Honor, that's a good point. Again, in hindsight, could things have been done differently? Yes, but as a practical matter, reviewing what happened with an abuse of discretion standard, we know what Mr. Briscoe is going to say. Whether it's an affidavit form or a letter to the chief judge form, we know what he's going to say. And if Judge Munley, in his order and opinion, said upon notification of plaintiff's custodian, well, we know what the prison officials are going to say. So if he heard from the Fayette Institution officials, and we've kind of heard from Mr. Briscoe with his subsequent letter, and we've kind of heard from him with his silence from not filing a motion to reconsider, we pretty much know what the different actors are going to say anyway. So I would submit, while it's a good point and it might build a more comfortable record, perhaps it's a little more form over substance, and I would submit what we have here, again, is enough under the current law. Thank you. Thank you very much. Mr. Daigle? Unfortunately, I don't have anything. You better announce your name for the record. I'm sorry. Please record my name is David Daigle. I represent Kenneth Klaus in this matter. I'll field any questions. Unfortunately, Mr. Mazesky has gone through. We've asked pretty much. I don't have anything particular of Mr. Klaus. The reason he has separate counsel is because? It is my understanding that there was the Chief Counsel, Office of Chief Counsel just refused to represent Mr. Klaus in this matter. They feel there were several participants that may have had maybe more culpable than others and just did not undertake the representation of Mr. Klaus. Okay. Thank you very much. Did you have a question? No, no. These guys are getting up. She has rebuttal. Thank you. If I might respond to one of the first points that was made, this court has held perhaps there is not a show cause or opportunity to respond required in Rule 41B, but this court has held in the past that as a general practice, sanctions should not be imposed by a court without prior notice and some occasion to respond. That was the night before its case, which I believe followed police some years later. Here there just wasn't that opportunity to respond. Mr. Briscoe didn't have it. And that, as I think it seems all sides are conceding, is a problem. Is there more blame, by the way, you might be alleging toward one person like Mr. Klaus? I beg your pardon, sir? Is there like more blame? Is there a scenario that's suggested by your client as to what happened, as to why he was not transported to prison or that he had good reason to refuse? Have people dug into that? He has advised me that he has had ongoing trouble with the guards and that he has been having trouble because he files lawsuits or has filed lawsuits in the past. As opposing counsel noted, there was a problem with his deposition, which the court did not consider that a history of dilatory conduct. The district court explicitly let that out. And I don't think that was unintentional. But there was a history of them denying him his legal papers, taking away his clothes so that he could not comfortably appear. So there is that history there. And that, I think, is the reason, based on what I can tell, that would be the reason for the refusal to transport. Has he, in connection with other litigation, refused to show up for appearances? Not to my knowledge. Ms. Simmons, for us to reverse this and grant you a hearing, don't we have to find that the district court abused its discretion in finding that the polis factors supported dismissal? I think that's true. And I think, well, it is true. If that's true, would you comment a little bit about the prejudice issue? I will. The prejudice issue, as Judge Michel pointed out, really doesn't come into play unless the trial is postponed. And even then, I think it's questionable. Although I understand, certainly, the idea of having to block up your calendar for a certain number of days and then having to undo all that and respond at a later date to the plaintiff's positions. On the other hand, you have the luxury of having your case in the can while the plaintiff scrambles. That's not necessarily something to sneeze at. The defendants didn't file a motion to dismiss. They never alleged prejudice at that time. And had the pre-trial conference been held a couple days later or been ordered to be held a couple days later and then Mr. Briscoe again failed to respond or that would be something different. That's not what happened here. The other issue regarding prejudice is, as this court held in Wesley v. Dixon, there is no prejudice if the plaintiff is not personally responsible for the non-appearance. As Your Honors noted just a few minutes ago, it's entirely speculative as to whether Mr. Briscoe was personally responsible for his non-appearance. He says he wasn't. He says he was prevented from going. Under Wesley, if there's a question, if he's not personally responsible, then there can be no prejudice ascribed to him. And as this court has noted, any doubts should be resolved against dismissal and in favor of reaching a decision on merits. That's not what happened here. All right. Thank you very much. Is this your first time before a court of appeals? It is. Well, as they say in South Philly, you've done good. Thank you. We thank both counsel for a well-presented case. We'll take it under advisement. Thank you. Sorry for the flush.